62 U.S. 244 (1858)
21 How. 244
RUFUS ALLEN AND OTHERS, LIBELLANTS AND APPELLANTS,
v.
HENRY L. NEWBERRY, CLAIMANT OF THE STEAMBOAT FASHION, &C.
Supreme Court of United States.

*245 It was argued by Mr. Haven for the appellants, and by Mr. Russell for the appellee.
Mr. Justice NELSON delivered the opinion of the court.
This is an appeal in admiralty from a decree of the District Court for the district of Wisconsin.
The libel states that the goods in question were shipped on board the Fashion at the port of Two Rivers, in the State of Wisconsin, to be delivered at the port of Milwaukee, in the same State, and that the master, by reason of negligence and the unskilful navigation of the vessel, and of her unseaworthiness, lost them in the course of the voyage.
The respondent sets up, in the answer, the seaworthiness of the vessel, and that the goods were jettisoned in a storm upon the lake.
The evidence taken in the court below was directed principally to these two grounds of defence; but, in the view the court has taken of the case, it will not be important to notice it.
The act of Congress of 26th February, 1845, prescribing and regulating the jurisdiction of the Federal courts in admiralty upon the lakes, and which was held by this court in the case of the Genesee Chief, (12 How., 443,) to be valid and binding, confines that jurisdiction to "matters of contract and tort, arising in, upon, or concerning steamboats and other vessels" * * * "employed in business of commerce and navigation between ports and places in different States and Territories upon the lakes, and navigable waters connecting said lakes," &c.
This restriction of the jurisdiction to business carried on between ports and places in different States was doubtless suggested by the limitation in the Constitution of the power in Congress to regulate commerce. The words are: "Congress *246 shall have power to regulate commerce with foreign nations and among the several States, and with the Indian tribes." In the case of Gibbon v. Ogden, (9 Wh., 194,) it was held, that this power did not extend to the purely internal commerce of a State. Chief Justice Marshall, in delivering the opinion of the court in that case, observed: "It is not intended to say that these words comprehend that commerce which is completely internal, which is carried on between man and man in a State, or between parts of the same State, and which does not extend to or affect other States." Again, he observes: "The genius and character of the whole Government seem to be, that its action is to be applied to all the external concerns of the nation, and to those internal concerns which affect the States generally, but not to those which are completely within a particular State, when they do not affect other States, and with which it is not necessary to interfere for the purpose of executing some of the general powers of the Government. The completely internal commerce of a State, then, he observes, may be considered as reserved for the State itself." (Ib., 195.)
This distinction in the act of 1845 is noticed by the present Chief Justice in delivering the opinion in the Genesee Chief. He observed: "The act of 1845 extends only to such vessels when they are engaged in commerce between the States and Territories. It does not apply to vessels engaged in the domestic commerce of a State."
This restriction of the admiralty jurisdiction was asserted in the case of the New Jersey Steam Navigation Company v. The Merchants' Bank, (6 How., 392,) the first case in which the jurisdiction was upheld by this court upon a contract of affreightment.
It was then remarked, that "the exclusive jurisdiction of the court in admiralty cases was conferred on the National Government, as closely connected with the grant of the commercial power. It is a maritime court, instituted for the purpose of administering the law of the seas. There seems to be ground, therefore, for restraining its jurisdiction, in some measure, within the limit of the grant of the commercial power, which would confine it, in cases of contract, to those concerning *247 the navigation and trade of the country upon the high seas, &c., with foreign countries and among the several States.
"Contracts growing out of the purely internal commerce of the State, &c., are generally domestic in their origin and operation, and could scarcely have been intended to be drawn within the cognizance of the Federal courts."
The contract of shipment in this case was for the transportation of the goods from the port of Two Rivers to the port of Milwaukee, both in the State of Wisconsin; and upon the principles above stated, the objection to the jurisdiction of the court below would be quite clear, were it not for the circumstance that the vessel at the time of this shipment was engaged in a voyage to Chicago, a port in another State. She was a general ship, with an assorted cargo, engaged in a general carrying business between ports of different States; and there is some ground for saying, upon the words of the act of 1845, that the contracts over which the jurisdiction is conferred, are contracts of shipment with a vessel engaged in the business of commerce between the ports of different States. But the court is of opinion that this is not the true construction and import of the act. On the contrary, that the contracts mentioned relate to the goods carried as well as to the vessel, and that the shipment must be made between ports of different States.
This view of the act harmonizes with the limitation of the jurisdiction as expressed, independently of any act of Congress, in the case of New Jersey Steam Navigation Company v. The Merchant's Bank, before referred to.
We confine our opinion upon the question of jurisdiction to the case before us, namely, to the suit upon the contract of shipment of goods between ports and places of the same State.
The court is of opinion that the District Court had no jurisdiction over it in admiralty, and that the jurisdiction belonged to the courts of the State.
It may be, that in respect to a vessel like the present, having cargo on board to be carried between ports of the same State, as well as between ports of different States, in cases of sale or bottomry of a cargo for relief of the vessel in distress, of voluntary stranding of the ship, jettison, and the like, where *248 contribution and general average arise, that the Federal courts shall be obliged to deal incidentally with the subject, the question being influenced by the common peril in which all parties in interest are concerned, and to which ship, freight, and cargo, as the case may be, are liable to contribute their share of the loss.
A small part of the goods in question in this case were shipped for the port of Chicago, but are not of sufficient value to warrant an appeal to this court.
The decree of the court below dismissing the libel affirmed.
Mr. Justice WAYNE, Mr. Justice CATRON, and Mr. Justice GRIER, dissented.
Mr. Justice DANIEL concurs in the decree for the dismission of the libel in this case, but not for the reasons assigned by the court. It being my opinion, as repeatedly declared, that the admiralty jurisdiction, under the Constitution of the United States, is limited to the high seas, and does not extend to the internal waters of the United States, whether extending to different States or comprised within single States. If there be any inefficiency in this view of the admiralty powers of the Government, the fault is chargeable on the Constitution, and on the want of foresight in those who framed that instrument, and it can be legitimately remedied by an amendment of the Constitution only.