RANDALL AND MORELL v. ROCHE AND CREEDE.

1. The vessel lien law of this state applies as well to foreign as to domestic vessels.
2. A lien for supplies furnished to a foreign vessel, on the bredit of one of the owners or the master, does not create a maritime lien on the vessel within the jurisdiction of the United States courts of admiralty, and may be enforced in the courts of this state.

This was a demurrer to certain pleas, the particulars of which sufficiently appear in the opinion delivered.

Argued at February term, 1862, before the CHIEF JUSTICE and Justices ELMER and VANDYKE.

For the plaintiff, *I. W. Scudder*.

For the defendant, *R. Gilchrist*.

The opinion of the court was delivered by

ELMER, J. The action in this case is upon a bond given under the twelfth section of the act entitled, "an act for the collection of demands against ships, steamboats, and other vessels." 3 *Nix. Dig.* 529.[*] The pleas demurred to aver, in substance, that the vessel in question, called the Pope Catlin, was a foreign vessel, enrolled in the state of New York, and owned by Roche, one of the defendants, the master of said vessel, and another person, both of whom resided in New York, and not in New Jersey. It was insisted by the counsel for the defendants, that the act above referred to does not apply to such vessels; and if it does, that, so far as it purports to give a lien for supplies furnished to a vessel engaged in commerce and navigation between different states, it is in conflict with the constitution and laws of the United States, which give exclusive jurisdiction of admiralty and maritime causes to the courts of the United States.

The terms of the act certainly include all descriptions of vessels, and however impolitic such lien laws may be justly regarded, they are, at present, evidently much in favor with those who control our state legislation, and whether wise or unwise, must be enforced according to their true intention by our courts. The act is copied from the New York law, where it has always been regarded as applying to foreign vessels; indeed, for many years, only such vessels were affected by it. 17 *Johns. R.* 54;[†] 1 *Wend.* 557;[‡] 5 *Hill* 34;[§] 3 *Selden* 508.[||] Similar laws exist in many of the eastern and western states.

In regard to the conflict of jurisdiction, none of the pleas show that the lien sought to be enforced was within the ju-

---

[*] *Rev., p.* 586.  [†] *Birbeck* v. *Ferry Boats.*  [‡] *Walker* v. *Blackwell.*  [§] *Many* v. *Noyes.*  [||] *Pendleton* v. *Franklyn.*

risdiction of the admiralty. The debt was contracted by Roche, the master of the vessel, and the pleas show that he was also one of the owners. By the maritime law of this country, where a master obtains supplies in a foreign port, (and a port in a different state from that in which the vessel is owned, is for this purpose held to be a foreign port,) which are necessary to enable the vessel to proceed, it is presumed that he makes the contract on the credit of the vessel, and there is a lien which will be enforced by the admiralty courts; but if the supplies were obtained by an owner or part owner, or if the master obtains them on his own credit, they are not liens. *The Virgin*, 8 *Peters* 538 ; *Thomas* v. *Osborn*, 19 *How*. 22.

It will not be necessary in this case to decide whether a proper maritime lien can be enforced in any other mode than by a proceeding in admiralty ; and in view of the difficulties which beset the whole subject, and the diversity of opinion which has hitherto prevailed among the judges of the Supreme Court of the United States, it is best to express no opinion. See *Jackson* v. *Steamboat Magnolia*, 20 *How*. 393, and *Taylor* v. *Caryl*, 20 *How*. 583. But if it be admitted that the state courts have no jurisdiction in such a case, to divest the state courts it must be clearly shown that the lien in question was of that description. The facts stated raise no such presumption, nor is it averred in terms that the lien was one that came within the jurisdiction of the admiralty.

Judge Story, in the case of the *Bark Chusan*, 2 *Story's Rep*. 461, has made some observations which would seem to imply that he considered the New York statute would be unconstitutional if applied to a foreign vessel. Judge Nelson, however, in the case of *The Globe*, 2 *Blatch. C. R*. 430, takes a different view of it, and treats it as creating a good lien. He notices Story's remark, and says : " but this remark was made in answer to the argument that the statute controlled the jurisdiction of the admiralty, and in that view the statute would have been unconstitutional."

Chief Justice Watkins, in the case of *Merrick* v. *Avery*, 14

*Ark.* 378, gives an able opinion on the lien law of Arkansas, and remarks, correctly I think, that the beneficial operation of that law was to extend the privilege of the maritime lien upon seagoing vessels, for their building or equipment in domestic ports, just as that lien existed in Europe, and would have prevailed in England, and so descended to this country, but for the jealousy of the common law.

It was urged, by counsel, that the provision in the constitution of the United States, giving to congress the power to regulate commerce with foreign nations and among the several states, would exclude this lien from state cognizance. Much of the difficulty on the subject probably has arisen from confounding this clause with that giving jurisdiction to the federal courts in admiralty. If the legislative power given to congress to regulate commerce had been held to be exclusive, as is perhaps the better opinion, it would have covered the whole case, and no state legislature could create a new maritime lien, or in any way interfere with foreign commerce or commerce between the states. Such, however, is not the doctrine of the Supreme Court. That court holds the power over commerce to be, so far as it is exercised, paramount to state legislation; but the power of the state remains in other cases untouched, so that what congress has not regulated each state may regulate for itself within its own territory. As the constitution is now construed, congress may declare what debts shall be liens on foreign vessels, and that no others shall be, and thus render maritime liens uniform throughout the Union; and it will probably not be long before it will be found indispensable to do this. Large foreign ships are now liable to be seized by attachments and other state process, in such manner as may seriously embarrass commerce. But until this is done, the states may create new liens on vessels and enforce them.

What are properly admiralty and maritime causes, it has been found very difficult to define, and cannot be said yet to be definitely settled. In its nature, however, the admiralty jurisdiction is exclusive. But it is jurisdiction over admi-

Randall v. Roche.

ralty causes, and not jurisdiction over all causes affecting foreign vessels, or over all liens on such. At one time the admiralty courts enforced liens exclusively of state creation, a practice now abandoned as untenable. *Allen* v. *Newberry*, 21 *How.* 245 ; *Ib.* 249, *Maguire* v. *Card.* If a cause does not belong to the admiralty courts, they cannot interfere. When it does, the states cannot abridge or in any way control it. In all cases the common law remedies remain, and may be resorted to in the state courts. What is a common law remedy, and how far the state laws may change the course of proceeding, are difficult questions I shall not now examine. A debt constituting a maritime lien may be collected by a common law remedy, but admiralty proceedings cannot be instituted in state courts. Any cause of action which does not constitute an admiralty cause within the decisions of the Supreme Court of the United States, is not affected by the constitution of the United States. The state legislation may provide new liens and new remedies for such causes in all cases of vessels or parties coming within its territory, and thereby becoming subject to its laws. It is simply a contradiction in terms to say that a cause which is not an admiralty or maritime cause belongs exclusively to a jurisdiction which is confined to such causes, and can embrace no others.

I am of opinion that the demurrers are well taken, and that the pleas are bad.

The CHIEF JUSTICE, and HAINES and VAN DYKE, Justices, concurred.

CITED in *Edwards et al.* v. *Elliott,* 7 *Vroom* 454.