## THE WESTERN STATES.

### (Circuit Court of Appeals, Second Circuit. February 11, 1908.)

1. ADMIRALTY—JURISDICTION—STATUTES—APPLICATION. ·

Rev. St. § 566 [U. S. Comp. St. 1901, p. 461], providing that in cases of admiralty and maritime jurisdiction relating to any matter of contract or tort arising on or concerning any vessel of 20 tons burden or upward, enrolled and licensed for the coasting trade, and at the time employed in the business of commerce and navigation between places in different states and territories upon the lakes and navigable waters connecting the lakes, the issues of fact shall be tried by jury when either party requires it, applies only to the Great Lakes and waters connected therewith, and then only to such issues of fact as arise in cases of contract or tort; the statute having no reference to foreign vessels or those trading between ports of the same state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 595.]

2. SAME—EFFECT OF VERDICT.

Where a libel in admiralty was filed by a passenger of a steamboat on the Great Lakes for an assault and robbery on libelant while occupying her stateroom as a passenger by a member of the crew, during which libelant was chloroformed and robbed of her rings, watch, and $38 in money, and a jury summoned to try the issues of fact as authorized by Rev. St. § 566 [U. S. Comp. St. 1901, p. 461], awarded libelant $15,000,. the district judge properly set such verdict aside on the ground that it was the result of passion and prejudice, or a misunderstanding of his charge, and entered a decree for libelant for $5,000, without reference to whether such verdict was conclusive or merely advisory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 598.]

3. SAME—ADMIRALTY JURISDICTION — TRANSPORTATION CONTRACT — PERFORMANCE—NEGLIGENCE.

A libel in admiralty in rem was maintainable for injuries to a passenger of a steamboat on the Great Lakes resulting from negligence in the performance of the transportation contract, by reason of which negligence the passenger's stateroom was entered, and she was assaulted and robbed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 284.

Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Budd, 27 C. C. A. 530.]

4. SHIPPING—CARRIAGE OF PASSENGERS—NEGLIGENCE.

Where a passenger steamboat on the Great Lakes was equipped with 343 staterooms on two decks in two rows, with a passageway between them, the boat was negligent in failing to provide a sufficient watch; one man only being provided for that purpose.

5. SAME—NEGLIGENCE OF WATCHMAN.

Where an oiler on a steamboat was able to leave his quarters below and traverse parts of the boat which were brilliantly lighted, and where he had no right to be, and break into a stateroom, rob a passenger, and· get away without being seen, such facts were sufficient to show that the watchman provided was negligent.

6. SAME—SECURING DOORS.

· The vessel was negligent in failing to provide the door of the stateroom with bolts or inside protection other than a lock which could be operated from outside, and was not excused by the fact that such inside securities might embarrass the passenger in case of fire or sudden danger.

7. ADMIRALTY—APPEAL—AFFIRMANCE.

Where, on appeal in an admiralty proceeding from a decree in favor of libelant for $5,000, the Court of Appeals found that the amount awarded would compensate libelant for her injury, the decree would be affirmed

with interest and costs, instead of directing the District Court to enter a decree in accordance with the views of the Court of Appeals, which would be the proper course; the proceeding on appeal being in the nature of a new trial.

Appeals from the District Court of the United States for the Western District of New York.

For opinion below, see 151 Fed. 929.

Bushnell & Metcalf (J. N. Metcalf, of counsel), for libelant.

Rogers, Locke & Babcock (Louis Babcock and Evan Hollister, of counsel), for claimant.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The libelant was a passenger September 12, 1904, on the steamboat Western States from the city of Buffalo to the city of Detroit. At about 2 in the morning she was awakened by hearing a man in her stateroom. He went out, but in a short time came back, put a cloth with chloroform on it over her face, held her forcibly down in her berth until she was unconscious, and then took her rings from her fingers, her watch from under her pillow, and about $38 in money from her purse. When she regained consciousness, she found she had been very sick at her stomach, and, putting on a cloak, went down into the saloon where she found only a bellboy asleep. At her request, he brought the nightwatchman, and subsequently the captain, to whom she told her story. They were, according to her account, both incredulous and discourteous. A day or two afterwards the police of Detroit arrested a man who had been an oiler on the steamboat, and he, when confronted by the libelant, admitted the assault and robbery, and was convicted of piracy and sentenced to hard labor for life.

The door of the libelant's stateroom was solid, opening with a key in the usual way from the outside, but when closed locking itself. The key could not be used from the inside, and no one could get in from the outside except by the use of the key. There was no bolt or contrivance of any kind on the inside which would protect the passenger from the entrance of anyone so provided. The steamboat had 343 staterooms, which were on two decks, the lower one called the "saloon deck" and the upper one the "promenade deck." These staterooms for a considerable distance amidships were in two rows on each side with a passageway between. The libelant occupied No. 323, an outside room on the port side on the promenade deck. There was but one night watchman, whose duty it was to patrol these decks from 6 p. m. to 6 a. m., and report every half hour to the lookout in the pilot house that he had done so. The libelant began this action in the District Court of the United States for the Western District of New York against the steamboat in rem, charging the owners with negligence in performing the contract of transportation in not affording her a sufficient means of securing herself against intruders into her stateroom, in not keeping a sufficient and vigilant watch, and in treating her disrespectfully and discourteously when she reported the occurrence. The claimant in its answer admitted the robbery, but de-

nied all negligence connected either with the security of the stateroom or with the sufficiency of the watch or with the disrespectful treatment of the libelant. It further excepted to the libel on the ground that the cause of action was for an assault, which, under rule 16 of the Supreme Court in admiralty, could not be maintained in rem. This exception the district judge overruled on the ground that the cause of action was not for the assault, but for negligence in the performance of the contract of transportation. Subsequently the libelant, under section 566 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 461], demanded a trial of the issues of fact before a jury and the same took place October 11, 1906, in the District Court of Lockport, resulting in a verdict for the plaintiff of $15,000.

The provisions of this section, so far as applicable, are as follows:

"* * * In causes of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons burden or upward, enrolled and licensed for the coasting trade and at the time employed in the business of commerce and navigation between places in different states and territories upon the lakes and navigable waters connecting the lakes, the trial of issues of fact shall be by jury when either party requires it."

The question is raised whether the verdict of the jury is binding upon the District Court as contended by the libelant, or like a feigned issue out of chancery, only advisory, as contended by the claimant. The provision is an anomaly in the admiralty jurisdiction, which it is hoped Congress will repeal. It applies only to the Great Lakes and waters connected therewith, and then not to all issues of fact, but only to those arising in cases of contract or tort. It cannot be availed of in case of foreign vessels or of vessels trading between ports of the same state, and it introduces a system of trial wholly foreign to the practice, forms, and procedure of courts of admiralty. The history of it is as follows: The original test of admiralty jurisdiction in England was that the contract was made or the tort or transaction occurred on tidal waters, and, as in that country there was no navigation except upon tidal waters, the test was a very fair one. This was equally true of the United States in its early history, so that the same test was applied in determining the jurisdiction of admiralty courts. But when commerce developed upon the Great Lakes, especially after the introduction of steamboats, it was thought desirable that the same law should be applied there as had always been applied on the high seas and tidal waters connected therewith. Accordingly Congress passed Act Feb. 26, 1845, c. 20, 5 Stat. 726, entitled "An act extending the jurisdiction of the District Courts to certain cases, upon the lakes and navigable waters connecting the same," in these words:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the District Courts of the United States shall have, possess, and exercise the same jurisdiction in matters of contract and tort, arising in, upon, or concerning, steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters connecting said lakes, as is now possessed

and exercised by the said courts in cases of the like steamboats and other vessels employed in navigation and commerce upon the high seas, or tide waters, within the admiralty and maritime jurisdiction of the United States; and in all suits brought in such courts in all such matters of contract or tort, the remedies, and the forms of process, and the modes of proceeding, shall be the same as are or may be used by such courts in cases of admiralty and maritime jurisdiction; and the maritime law of the United States, so far as the same is or may be applicable thereto, shall constitute the rule of decision in such suits, in the same manner, and to the same extent, and with the same equities, as it now does in cases of admiralty and maritime jurisdiction; saving, however, to the parties the right of trial by jury of all facts put in issue in such suits, where either party shall require it; and saving also to the parties the right of a concurrent remedy at the common law, where it is competent to give it, and any concurrent remedy which may be given by the state laws. where such steamer or other vessel is employed in such business of commerce and navigation."

This was, as the title implies, plainly an act professing to extend the jurisdiction and the provision saving the right of trial by jury of facts put in issue where either party should require it was included because of reverence for the jury system. In the year 1851 a cause arising out of a collision on Lake Ontario between the propeller Genesee Chief and the schooner Cuba reached the Supreme Court. The owners of the schooner having filed their libel in rem against the propeller the claimant averred that the collision did not take place in tidal waters nor on the high seas, and therefore that the court had no jurisdiction thereof. The Genesee Chief, 12 How. 443, 13 L. Ed. 1058. The court proceeded to inquire into the whole subject of jurisdiction. Section 2 of article 3 of the Constitution provides:

"The judicial power shall extend  *  *  *  to all cases of admiralty and maritime jurisdiction."

The judiciary act of 1789 (Act Sept. 24, 1789, 1 Stat. 73, c. 20, § 9) gives to the District Courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction including all seizures under the laws of impost, navigation or trade of the United States where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden within their respective districts as well as upon the high seas." The court pointed out that the jurisdiction under this act depended, not upon the question whether the waters were tidal, but upon the question whether they were navigable, and, the waters of the Great Lakes being navigable, it was held that the District Courts of the United States had exclusive jurisdiction over them under the act of 1789. The act of 1845 which was passed for the purpose of extending the admiralty jurisdiction was accordingly construed as really restricting it.

The reservation of the right to a jury trial was treated as a mere matter of practice:

"The power of Congress to change the mode of proceeding in this respect in its courts of admiralty will, we suppose, hardly be questioned. The Constitution declares that the judicial power of the United States shall extend to 'all cases of admiralty and maritime jurisdiction.' But it does not direct that the court shall proceed according to ancient and established forms, or shall adopt any other form or mode of practice. The grant defines the subjects to which the jurisdiction may be extended by Congress. But the extent of the power, as well as the mode of proceeding in which

that jurisdiction is to be exercised, like the power and practice in all the other courts of the United States, are subject to the regulation of Congress, except where that power is limited by the terms of the Constitution, or by necessary implications from its language. In admiralty and maritime cases there is no such limitation as to the mode of proceeding, and Congress may, therefore, in cases of that description, give either party right of trial by jury, or modify the practice of the court in any other respect that it deems more conducive to the administration of justice. And, in the proceedings under the act of 1845, the right to a trial by jury is undoubtedly secured to either party if he thinks proper to demand it."

In 1868 the question arose again in the case of The Eagle, 8 Wall. 15, 19 L. Ed. 365. The court departed from the ruling in the case of the Genesee Chief, which had been followed in the cases of Allen v. Newberry, 21 How. 246, 16 L. Ed. 110, and in Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451, and held that the act of 1845 was not restrictive, but entirely inoperative except as to this reserved right to a jury trial:

"We must, therefore, regard it as obsolete and of no effect, with the exception of the clause which gives to either party the right of trial by jury when requested, which is rather a mode of exercising jurisdiction than any substantial part of it."

It is probably in consequence of this observation that the practice of injecting jury trials into admiralty proceedings on the Great Lakes and waters connected therewith was carried into section 566 of the Revised Statutes.

Courts of chancery have always, for the purposes of their own enlightenment, exercised the power of submitting issues of fact to be tried by juries. In such cases, however, the chancellor prepares the issues, and he is not bound by the verdict of the jury upon them. So little bound that a bill of exceptions cannot be taken, or, if taken, can only be used on a motion for a new trial. Johnson v. Harmon, 94 U. S. 371, 24 L. Ed. 271; Watt v. Starke, 101 U. S. 247, 250, 25 L. Ed. 826. When, however, the statute gives to a party the right to a jury trial, it is difficult to believe that it was intended to authorize the court to take this right away and substitute its own findings for the jury's, as in the case of feigned issues sent out of chancery. Such a practice does not give the party a jury trial at all, or, at best, it gives with one hand what it takes away with the other. It seems to us that, consistently with a party's right to a jury trial, the power of the court can go no further than to grant a new trial.

This is concisely stated by Judge Haight in McClave v. Gibb, 157 N. Y. 413, 52 N. E. 186, 187:

"Where a party is entitled by the Constitution or by express provisions of law to a trial by jury of one or more issues of fact, the finding of the jury is conclusive in the action, unless the verdict is set aside or a new trial is granted; but, where the party is not entitled as of right to a trial by jury, the verdict is not conclusive upon the parties, and the trial court may adopt it, modify it, or disregard it, and find the facts anew. In the latter class of cases the verdict is treated as an aid to the court to inform its conscience, but it is in no wise bound thereby, for the responsibility of determining the facts rests upon the trial judge and our Code has not changed the rule in this respect. Code Civ. Proc. 970, 971; McNaughton v. Osgood, 114 N. Y. 574, 21 N. E. 1044; Learned v. Tillotson, 97 N. Y. 1, 6, 49 Am. Rep. 508; Jackson v. Andrews, 59 N. Y. 244; Colie v. Tift, 47

N. Y. 119; Wilson v. Riddle, 123 U. S. 608, 8 Sup. Ct. 255, 31 L. Ed. 280; Van Alst v. Hunter, 5 Johns. Ch. [N. Y.] 148."

See, also, 16 Cyc. pp. 410–429; Hill v. Phillip's Adm'r, 87 Ky. 169, 7 S. W. 917; Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685; The State v. Farrish, 23 Miss. 483; Cuthbert v. Ives, 65 Hun, 625, 20 N. Y. Supp. 469; Meeker v. Meeker, 75 Ill. 260; Whitted v. Fuquay, 127 N. C. 68, 37 S. E. 141; Griffith v. Griffith, 9 Paige (N. Y.) 315.

Still, in the Sixth circuit, Judge, afterwards Mr. Justice, Brown, in the case of The Empire (D. C.) 19 Fed. 558, seems to have held a contrary view. A jury trial under section 566 had been had, and the libelant moved for a new trial. The learned judge set the verdict aside, but the report does not show whether he ordered a new trial or entered a decree in accordance with his own views of what was right. He did hold, relying principally upon the opinion of Mr. Justice Matthews in Boyd v. Clark (C. C.) 13 Fed. 908, that the verdict was advisory only. But in Boyd v. Clark the only point decided was that the proper practice in such cases was to take an appeal, and not a writ of error, and upon the appeal the case stood for trial in the Circuit Court precisely as if tried by the District Court. As to the effect of the verdict, Mr. Justice Matthews declined to express any opinion, saying:

"Whether the jury allowed in this class of admiralty cases is anything more than advisory to the District Court as are juries in chancery cases I do not deem it necessary to express an opinion."

We do not discover anything in this case or in two others cited by Judge Brown which justified the conclusion that verdicts rendered under section 566 are advisory only. The two other cases cited were Lee v. Thompson, 3 Woods, 167, Fed. Cas. No. 8.202, in which everything Justice Bradley said about jury trials was with reference to feigned issues for the enlightenment of the court, and Basey v. Gallagher, 20 Wall. 670, 22 L. Ed. 452, which was an action in equity for an injunction only, in which Justice Field held that the statute of Montana allowing only one form of civic action, and providing that "issues of fact shall be tried by jury unless a jury is waived or a reference ordered," was not intended to abolish the difference between legal and equitable actions. He said:

"But the consideration which the court will give to the questions raised by the pleadings, when the case is called for trial or hearing, whether it will submit them to a jury, or pass upon them without any such intervention, must depend upon the jurisdiction which is to be exercised. If the remedy sought be a legal one, a jury is essential, unless waived by the stipulation of the parties: but, if the remedy sought be equitable, the court is not bound to call a jury, and if it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. The decree which it must render upon the law and the facts must proceed from its own judgment, respecting them, and not from the judgment of others."

Judge Longyear, in Gillette v. Pierce, Brown's Admiralty, 553, Fed. cas. No. 5,437, held that section 566 did not apply at all, because the pleadings did not show that the vessel involved was enrolled or licensed for the coasting trade. In his very interesting discussion of that section he simply suggested that Congress should legislate to make the jury trials advisory only. It is true that Judge Ricks, in The City of

Toledo (D. C.) 73 Fed. 220, did hold such verdicts advisory only because he thought any other construction would be a curtailment of the power of the admiralty judge. This does not seem consistent with the view of the Supreme Court in the Genesee Chief, supra, which treats the provision as a mere regulation of practice, and was not necessary to be decided because the learned judge found the vessel did not fall within the provisions of section 566. The district judge, following the practice established in the Sixth circuit, entered a decree in favor of the libelant for $5,000 because he thought the verdict of $15,000 was the result of passion or prejudice, or of misunderstanding his charge.

Upon the whole case we think the district judge right. We have no doubt of the jurisdiction in rem in a cause where negligence in the performance of a contract of passenger transportation is involved. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397; The Minnetonka, 146 Fed. 509, 77 C. C. A. 217. We also think that the watch maintained was insufficient. One man upon two decks in a large steamboat so cut up by staterooms that it is necessary to keep walking about in order to see them at all seems a meager protection. That the watchman was not vigilant may be inferred from the fact that an oiler could leave his quarters below, traverse parts of a brilliantly lighted steamboat where he had no right to be, accomplish this robbery, and get away without being seen.

In one respect, however, we think the District Judge took too favorable a view for the claimant, viz., in holding that the vessel was not at fault for not giving the libelant a bolt or some means of securing the door of her stateroom from the inside. It is true there was some evidence, though far from convincing that bolts or inside protections were not generally used in steamboats on the Great Lakes. While the failure to use appliances generally employed may be evidence of negligence, the general neglect of safeguards does not establish care. Admitting that the lock itself was a good one, it seems to us that an inside bolt should have been supplied, and that the reason given for not doing so, viz., that it might embarrass the passenger in case of fire or sudden danger, is wholly unsatisfactory.

The proceeding before us is in the nature of a new trial in which we find that the sum of $5,000 and interest will sufficiently compensate the libelant for the injury received by her. Irvine v. The Hesper, 122 U. S. 256, 266, 7 Sup. Ct. 1177, 30 L. Ed. 1175. In such circumstances the proper course, strictly speaking, would be to direct the District Court to enter a decree in accordance with these views. It seems, however, unnecessary to subject the parties to the annoyance and expense of such a proceeding, as the decree on file is in accordance with the views entertained by us.

The decree is affirmed, with interest and costs of the District Court, but, as both parties have appealed, without costs to either in this court.