# EFFINGER *v.* EFFINGER

No. 2645

September 10, 1924.                    228 Pac. 615.

ON MOTION FOR COUNSEL FEES

1. DIVORCE — AFFIDAVITS HELD NOT TO JUSTIFY COURT ORDER REQUIRING HUSBAND TO PAY WIFE'S COUNSEL FEES.
    Allegations in affidavits *held* not to show divorced wife to be in such necessitous circumstances as to justify court order requiring the husband to pay her counsel fees, on appeal from divorce decree in husband's favor.

2. DIVORCE—WIFE'S ACTUAL NEED IS BASIS OF RIGHT TO COMPEL HUSBAND TO PAY COUNSEL FEES ON APPEAL.
    Wife's actual need is the basis of her right to compel her divorced husband to pay her counsel fees on appeal from the decree.

3. DIVORCE—FROM STANDPOINT OF LAW, TO ENTITLE PARTY TO COUNSEL FEES, $600 MONTHLY AS LIVING EXPENSES IS RATHER HIGH.
    Considered from standpoint of necessitous circumstances contemplated by the law, to entitle wife to allowance of counsel fees on appeal from divorce decree, $600 per month for living expenses was rather high, especially where no one was dependent on her for support.

See 19 C. J. sec. 547, p. 232, n. 92; sec. 553, p. 235, n. 47.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Suit by Robert Craig Effinger against Annie Harahan Effinger. Decree for plaintiff, and defendant appeals. On motion for counsel fees. **Motion denied.**

*Cooke, French & Stoddard,* for Appellant.

*Hoyt, Norcross, Thatcher, Woodburn & Henley,* for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

This is a motion made by appellant for counsel fees, on an appeal taken by her from a decree of divorce obtained by respondent.

1. In her motion and notice thereof she asks that respondent be required to pay $2,500 as her necessary

and reasonable counsel fees. In support of her motion she filed two affidavits, and respondent has filed his affidavit in opposition thereto, all of which were read and submitted on the hearing of the motion. From a careful consideration of the affidavits for and against the motion, we are persuaded that no such necessity exists as to call for the exercise of our discretion in requiring respondent to pay to appellant the sum of $2,500, or any sum, for her counsel fees on this appeal.

In the case of Black v. Black, recently decided in this court, we said that the rule requiring the husband to pay the wife sufficient to enable her to maintain herself and meet the expenses of her suit or defense is based on necessity to prevent a failure of justice, and will not be required unless it appears that the wife is destitute of the means to be employed for such purposes. Black v. Black, 47 Nev. 346, 221 Pac. 239. On this subject Mr. Nelson, in his work on Divorce and Separation, cited in the foregoing case, says:

"The ecclesiastic courts seemed to have allowed temporary alimony almost as a matter of course, without much inquiry as to the wife's circumstances. But as this relief is only granted on the ground of necessity, it is incumbent upon the wife to show that the necessity exists. Especially is this true at the present time when married women may acquire and possess real and personal property in their own right. It is error to grant alimony without such proof, as there is no presumption that she has no property. To grant temporary alimony without proof of the wife's needs is an abuse of discretion. The fact that the wife is destitute of means to carry on her suit and to support herself during its pendency is as essential as any other fact to authorize the court to award temporary alimony. This is not a mere matter of discretion, but the settled principle of equity." 2 Nelson on Divorce and Separation, —; Collins v. Collins, 80 N. Y. 1.

Such is the great weight of authority.

Appellant admits that she has $900 more or less in bank, and that she has an income from a trust estate

which normally amounts to $8,000 per annum, and it appears from respondent's affidavit that she testified on the trial of the case that this income for the year 1916 amounted to $8,085.74; for the year 1918, $8,685,60; for the year 1919, $8,351.87; for the year 1921, $8,637.35. She alleges that she is indebted in the sum of $4,000 to various persons and that her ordinary and necessary living expenses amount to $600 per month, which will be greatly increased, owing to the fact that on the advice of her physician it will be necessary for her to leave her place of residence in the city of New York and temporarily, at least, to reside in a warmer climate. She alleges that she has paid $625 towards obtaining a transcript of the record on appeal in this case and for filing the appeal in the clerk's office of this court; that she has no income or property other than the income from the trust estate, and that the whole thereof is necessary to meet her expense of living and to pay the heavy indebtedness incurred by her in the defense of the action; that she has received no moneys to meet such expense from the respondent, by order of court or otherwise, and that the expense of the defense of said litigation in the district court, and incidental costs and disbursements incurred and paid in connection with obtaining numerous depositions therein, and the expense of her residence in Reno, apartment rent, living expenses, service of maid, etc., during the time she resided in Reno, covering a period of a year or thereabouts, were substantially in excess of her then current income, so that her income is still affected and depleted by having to be used to meet the expenses incurred upon the trial.

2. In her second affidavit she sets out an itemized statement of expenses incurred since making the first affidavit, by reason of an accident to her foot amounting in the aggregate to $1,015.15, part of which was incurred in New York City, and the balance in London and Paris. From this showing it appears that she has expended more than a year's income from her private estate. But the showing is not entirely satisfactory as to her actual need, which is the basis of her right to a

contribution from the respondent. It is indefinite as to what amount, if any, her expenses will be increased by a change of residence into a warmer climate, which change, we may note in passing, has not been made, so far as appears from her last affidavit.

3. Again, $600 per month may be a fair estimate of her ordinary expenses of living, and necessary also according to the mode of living to which she has been accustomed from her situation in life. But we regard it as rather high, considered from the standpoint of that necessity contemplated by law entitling a party to support and maintenance pending divorce proceedings, especially in view of the fact that she has no one dependent upon her for support, so far as is shown. But be this as it may, appellant has an income of not less than $8,000 per annum, and, while this may have been exhausted for a current year or more by her living expenses and the expenses of litigation, we are of the opinion that the showing does not reveal any such inroads upon her estate as to place her in need of help from the respondent to pay her counsel fees in the prosecution of this appeal, within the rule announced by this court in Black v. Black, supra. She has assets upon which to raise money to conduct her case. In Buehler v. Buehler, 38 Nev. 500, 151 Pac. 44, the court allowed the respondent a reasonable sum as an attorney's fee for her defense on appeal, but it appeared in that case that the appellant was a man of considerable means. And, as stated by the court, it also appeared that respondent was without means of support, had no assets upon which to raise money to conduct her case on appeal, and had no way of earning her living. In other words, it appeared that respondent was destitute of means to employ an attorney.

Appellant alleged that respondent is a man of wealth, owning and holding in his own name U. S. Liberty Bonds to the amount of $200,000, or thereabouts, and real estate in Charlottsville, Virginia, of the value of $12,000 or $15,000; that his father is worth $1,000,000, and upwards, and that respondent can, at any time, by applying to his father, obtain whatever funds he may

need, with hardly any limit to the amount. Respondent, in his affidavit denies these allegations as to his resources and alleges that he has an annual income of $8,931; that he has no property other than said income and $1,677.07 in bank, and owes $1,200; that he was compelled to sell a two-thirds interest in property at Staunton, Virginia, to help defray the expenses of the trial in the lower court; that the business in which he has been engaged has proved unprofitable. He alleges that his father is not worth $1,000,000 or upwards, or any other sum in excess of $300,000; that he has no call upon his father for financial assistance, and that his father renders him no financial assistance whatsoever; and that the father is an elderly man with a wife and two daughters, partially dependent upon him.

From the opposing affidavits it appears that the parties are about on an equal footing as to yearly income, with no other sources of revenue, and both equally burdened with the expenses of litigation. But the ability of the respondent to pay her counsel fees is immaterial, as the appellant has shown no such necessitous condition as warrants the granting of her motion.

It is therefore denied.

## ON THE MERITS

October 7, 1925.                                239 Pac. 801.

1. EVIDENCE—EXPERT TESTIMONY TO SHOW WITNESS NOT CREDIBLE PROPER, AFTER SHOWING THAT WITNESS WAS DRUG ADDICT.

Where, from testimony of superintendent of insane asylum, it was established that a witness, a former patient of the asylum, was a drug addict, it was competent to show by such expert testimony that as a drug addict the witness was not credible.

2. WITNESSES—PROOF OF HABITUAL USE OF DRUGS PROPER TO AFFECT CREDIBILITY OF WITNESS.

The habitual use of drugs, causing mental confusion and impairing moral character, may be shown to affect credibility of witness.

3. EVIDENCE—QUESTION AS TO TIME IN WHICH WITNESS BECAME DRUG ADDICT FOR JURY, IN DETERMINING CONDITION AT TIME OF OCCURRENCES TESTIFIED TO.

Doctor's testimony that witness had been in his opinion a drug addict for a year, and could not have arrived in such condition for at least six months, was for jury to weigh, in determining whether witness was drug addict at time of occurrences testified to by her.

4. Divorce—Jury—Divorce Action Statutory; Trial by Jury Granted in Divorce Suit.

A divorce action is statutory, and either party, under Rev. Laws, sec. 5845, has a right to a trial by jury, though such action may be equitable in nature.

5. Divorce—Under Statute Requiring Questions of Fact in Equity Case To Be Submitted to Jury, Issue Found by Jury Binding as in Action at Law.

Where a statute requires questions of fact presented by pleadings in equity case to be submitted to jury, issue found by jury is not simply advisory to court, but binding as in action at law, and application in a divorce action for court to disregard findings of jury and make own findings was properly denied.

6. Divorce—Verdict in Divorce Action Conclusive, Where Trial by Jury Granted, and Set Aside Only by New Trial for Cause.

The verdict in a divorce action, where a statute gives right to trial by jury, is conclusive as in action at law, and can only be set aside by a new trial for sufficient cause.

7. Divorce—Though Jury Findings in Divorce Action Advisory Only, No Error for Court to Refuse to Make Own Findings, where it Was Satisfied with Jury Findings.

Where, in an action for divorce, findings of jury are regarded as advisory only, it was not error for court to submit case to jury on general verdict and special findings, and refuse to make its own findings, where court was satisfied with and adopted findings and verdict of jury.

8. Appeal and Error—Receiving General Verdict, Together with Special Findings, Harmless Error, where Special Findings Adopted by Court.

In equity case, a general verdict should not be submitted or received with special findings; but, if such findings are adopted by court, the receipt of the general verdict is harmless error.

See (1, 3) 22 C. J. sec. 758, p. 664, n. 39; sec. 823, p. 729, n. 71; (2) 40 Cyc. p. 2575, n. 48; (4, 5, 6, 7) 19 C. J. sec. 23, p. 22; sec. 384, p. 151, n. 69; sec. 391, p. 154, n. 98, 99; (8) 4 C. J. sec. 3039, p. 1056, n. 66 (new); 21 C. J. sec. 723, p. 589, n. 53 (new); sec. 728, p. 592, n. 16; sec. 736, p. 597, n. 17.

Suit by Robert Craig Effinger against Annie Harahan Effinger for divorce. From a decree of divorce and an order denying a motion for new trial, defendant appeals. **Affirmed.**

*Cooke, French & Stoddard* and *Sardis Summerfield,* for Appellant:

Mere fact that witness uses or has used drugs does

not impair his credibility in absence of showing that his mind or memory was affected thereby, or that he was under influence at time of ocurrence or when testifying. State v. Milosovich, 42 Nev. 263; State v. Shuman, 152 Pac. 1084.

Court may submit case to jury on general issues in law, but not in equity. Simpson v. Harris, 21 Nev. 376; Strattan v. Raine, 45 Nev. 10.

Trial court is bound by verdict of jury in law, but may disregard it in equity if not entirely square with judge's conscience. Const. art. 6, sec. 6; Rev. Laws, 4830; Strattan v. Raine, supra.

Divorce case is suit in equity. Sharon v. Sharon, 7 Pac. 456; Rev. Laws, 5841.

If special findings are inconsistent new trial should be granted. Court cannot disregard some and render judgment on remainder. Barnes v. Sabron, 10 Nev. 217; 38 Cyc. 1931, n. 20.

Finding that defendant is guilty of extreme cruelty is conclusion and not finding of any fact. Cargnani v. Cargnani, 116 Pac. 306.

While recriminatory matter should be pleaded if wife seeks relief, it is admissible though not pleaded to refute allegation that her jealousy was without just cause, and also to throw light on general issue as to whether husband's conduct with other women was of such nature as to justify his wife's jealousy. Gardner v. Gardner, 23 Nev. 213.

*Thatcher & Woodburn,* for Respondent:

Instant case is distinguished from State v. Shuman, cited by appellant, for reason that here it clearly appears witness was habitual user of morphine at very time of occurrence of events testified to. State v. Fong Loon, 158 Pac. 233; State v. Prentiss, 183 N. W. 411.

Defendant will not be permitted to show plaintiff has not been faithful to marriage obligations, although complaint stated he was always faithful, where answer was general denial. As matter of recrimination is affirmative defense, it must be specially pleaded.

Newman v. Newman, 98 N. E. 507; Banks v. Banks, 67 Atl. 853.

Action for divorce is purely statutory in character. Worthington v. District Court, 37 Nev. 212. Even in equity cases where law provides for trial by jury, its verdict is same as in common-law action, and cannot be more readily disregarded. The Western States, 159 Fed. 354; Reider v. Walz, 101 N. W. 601; Mayville v. French, 92 N. E. 919.

Rev. Laws, 5845, gives either party right to trial by jury, in accordance with general rules governing trial of civil actions in district court. In such case, verdict of jury is conclusive. Horn v. Horn, 130 N. Y. S. 591; Garrett v. Garrett, 96 N. E. 882.

Since court adopted findings of jury, whether on theory tenable or untenable, how is appellant aggrieved? That court was satisfied with verdict is shown by its refusal to grant new trial. Stanley v. Stanley, 146 Ill. App. 109; McCauley v. McKeig, 21 Pac. 22.

Trial court, which hears witnesses, is better qualified to judge their credibility than appellant court which can learn the evidence only after it had been reduced to writing. Verdicts will not be disturbed except for most cogent reasons. Burns v. Loftus, 32 Nev. 55.

## OPINION

By the Court, DUCKER, J.:

In this action respondent sued for and obtained a decree of divorce from appellant. The complaint alleged extreme cruelty. The charges of cruelty were denied in the answer. For a further defense, and by way of counterclaim, appellant charged the respondent with willful desertion, and prayed for a decree of separate maintenance. On the trial of the case, at appellant's request, the counterclaim was dismissed. The case was tried before a jury. Special issues were submitted to the jury, and also a form of general verdict, all of which were found in favor of respondent. A decree of divorce was entered, from which, and the order denying a motion for a new trial, this appeal is taken.

1. Appellant assigns as error the admission of the testimony of Dr. R. H. Richardson, a witness for respondent, whose testimony went to the credibility of Mrs. Burger, a witness for appellant. The circumstances under which the doctor's testimony was admitted are as follows: Mrs. Burger testified that she had resided in Reno at the Gibson Apartments, and that a manicurist, Mrs. McKinney, had apartments next to hers. She stated that she saw the respondent leaving the apartments of the manicurist late at night a number of times. She said she saw him on one occasion leaving about 20 minutes past 2 in the morning, and on another about 1; never before 12. The witness then described in detail the brevity of the manicurist's costume and the affectionate nature of respondent's leave-taking. She also testified as to conversations she had with respondent at the Riverside Hotel in Reno about the 30th of July, 1921, in which he told her that he wanted to get a divorce from his wife; that he had absolutely no reason, but was going to get a divorce, if he had to manufacture some grounds on which to get it; and that as soon as he got it he was going to marry his secretary. The witness also testified that respondent told her in one of these conversations that he would poison his wife, if necessary, to get her out of the way.

Substantially stated, Dr. Richardson testified that he was the superintendent of the State Insane Asylum, and that Mrs. Burger was received in that institution under the name of Elizabeth Ware on the 11th day of January, 1922; that she was committed to the asylum for two months as a drug addict of the pronounced type, and that her physical condition was caused by the persistent use of morphia hypodermically. He said that she was emaciated, nervous, and showed all the usual signs in such cases, including the marks of needles. In his opinion, the witness had been addicted to the use of morphia for over a year, and could not have arrived in her condition in a shorter period than six months. In response to a question as to whether drug addicts are worthy of belief he stated:

"My experience is that they are not credible witnesses,

and that I would seldom believe one on a subject in which he was interested, unless he was corroborated. They have a tendency to want to distort the truth in preference to telling the truth. That is my experience, and I believe it is the experience of all. A drug addict is not liable to tell the truth, if he can avoid it."

On cross-examination the doctor stated that his statement on direct, that drug addicts were not credible witnesses on a subject in which they were interested, should not have been so limited, but that he meant that they were just as liable to distort the truth as to things they were not interested in. He said, also, that the woman was discharged from the asylum after two months' treatment as cured. He stated that a drug addict, discharged as cured of the habit, had a tendency to avoid telling the truth, but for how long a time thereafter he did not know. He admitted that he had never made any investigation for the purpose of testing this opinion.

We think his testimony was properly admitted. The examination discloses that the doctor was amply qualified by knowledge of the subject and long experience in the observation and treatment of drug addicts to give his opinion that the witness was one, the probable duration of the habit, and its effect upon her mental faculties. The fact was established by the doctor's testimony that Mrs. Burger was a morphine addict of the pronounced type when recevied in the asylum. On cross-examination he emphasized his opinion given on direct by saying:

"Her appearance was that of a pronounced drug addict. I haven't any doubt about it."

2. If the respondent could establish that she was such at the time of the occurrences and statements concerning which she testified, it was competent to show by expert testimony the abnormal effect upon her mind as to her liability to distort or subvert the truth. The propensity in this regard of an habitual user of drugs is well described and fortified by authority in State v. Fong Loon, 29 Idaho, 248, 158 P. 233, L. R. A. 1916F, 1198. The court said:

"We believe it will be admitted that habitual users of opium, or other like narcotics, become notorious liars. The habit of lying comes doubtless from the fact that the users of those narcotics pass the greater part of their lives in an unreal world, and thus become unable to distinguish between images and facts, between illusions and realities. In Wharton & Stille's Medical Jurisprudence (3d ed.), sec. 1111, it is said that 'of the mental symptoms,' in the case of a morphinomaniac or other habitual users of drugs, 'the most characteristic, perhaps, are the moral perversions. The chronic morphinomaniac is often a confirmed liar. The truth is not in him. * * * There is something quite pathological in this mendacity; the lying is unblushing, inexpert, spontaneous—a sort of second nature. * * * They have been so often narcotized, and thus cut off from actualities, living in a dream state, that they do not seem able to recognize realities when they see them.' "

The mental confusion and impairment of moral character produced by the habitual use of morphine, cocaine, or a like narcotic are established facts in medical research. That such use may be shown for the purpose of affecting the credibility of a witness is also well established. State v. Fong Loon, 29 Idaho, 248, 158 P. 233, L. R. A. 1916F, 1198; Anderson v. State, 65 Tex. Cr. R. 365, 144 S. W. 281; People v. Webster, 139 N. Y. 73, 34 N. E. 730. In State v. Fong Loon, supra, the lower court was reversed for sustaining objections to questions propounded to a witness on cross-examination for the purpose of showing that he was an habitual user of opium and yen she. The appellate court said:

"And we think it was error for the court to restrict counsel for appellant's attempt to elicit by cross-examination this information from Yee Wee, or to lay the foundation for the purpose of establishing by independent proof that Yee Wee was an habitual user of opium or other like narcotics, the extent of that use, and what, if any, effect it had or was more than likely to have upon the mental balance of this witness, the truthfulness of his testimony, and his capacity to remember and correctly translate the questions of the

representative of the state to Fong Chung into Chinese, and Fong Chung's answers into English."

3. Appellant contends that the doctor's testimony does not tend to show that Mrs. Burger was an habitual user of morphine, either at the time she gave her testimony or at the time of the occurrences or statements testified to by her. It may be conceded that the testimony does not tend to show that she was a drug addict when her deposition was given, but we think it has such tendency at the time she claims to have observed the respondent's conduct at the Gibson Apartments and heard his statements concerning appellant at the Riverside Hotel. She claims the statements were made about July 30, 1921. She gives no date as to the occasions on which she saw respondent leaving the apartment of the manicurist, but it appears from the testimony of Mr. Gibson, the manager of the Gibson Apartments, that she came there on the 2d day of August, 1921, and left about the 1st of the following September, and that Mrs. McKinney, the manicurist, whom she claims she saw respondent kissing and caressing on leaving her apartment late at night and in the early morning hours, did not come to the Gibson Apartments until August 14, 1921. Consequently Mrs. Burger's opportunities for observing the actions of respondent and Mrs. McKinney at the Gibson Apartments, as she claims she did, could not have been earlier than the middle of August, 1921. In Dr. Richardson's opinion she was a morphine addict of the pronounced type within this period. As previously stated, he testified that she was such an addict on January 11, 1922, and in his opinion has been addicted to the use of morphia for over a year, and could not have arrived in her condition in a shorter period than six months. We think it was proper for the jury to weigh his testimony in this regard.

4. It is contended that the court erred in submitting the case to the jury upon the general issue or general verdict, and in denying appellant's application to the court to reject the special findings and general verdict and in disregarding his application to the court to make

its own findings and enter a decree in her favor denying respondent any relief. These assignments are based upon the contention that the action is one in equity and not an action at law. This court has heretofore declared, upon authority entirely satisfactory, that a divorce action is statutory. Worthington v. District Court, 37 Nev. 230, 142 P. 230, L. R. A. 1916A, 696, Ann. Cas. 1916E, 1097. Whether, notwithstanding it is essentially equitable in its nature,. as appellant contends, we find it unnecessary to determine. By statute either party is given the right of trial by jury. Section 5845 of the Revised Laws provides:

"Either party, on application to the court, may be entitled, at such trial, to have the issue of fact involved in such case and presented by the pleadings, tried by a jury, in accordance with the general rules governing the trial of civil actions in the district court."

5. It is well established that, when a statute requires a question of fact presented by the pleadings in an equity case to be submitted to a jury, then the issue found by the jury is not simply advisory to the court, but binding, as in an action at law. 21 C. J. 592; Mayville v. French, 246 Ill. 434, 92 N. E. 919; Reider v. Walz et al., 93 Minn. 399, 101 N. W. 601; The Western States, 159 F. 354, 86 C. C. A. 354. The rule is recognized and stated in McClave v. Gibb, 157 N. Y. 413, 52 N. E. 186. In The Western States, supra, the reason for the rule is stated:

"When, however, the statute gives to a party the right to a jury trial, it is difficult to believe that it was intended to authorize the court to take this right away and substitute its own findings for the jury's, as in the case of feigned issues sent out of chancery. Such a practice does not give the party a jury trial at all, or, at best, it gives with one hand what it takes away with the other. It seems to us that, consistently with a party's right to a jury trial, the power of the court can go no further than to grant a new trial."

6. When the right of trial by jury is given by statute in divorce actions the verdict is uniformly held to be

conclusive as in an action at law and can only be set aside by the granting of a new trial for sufficient cause. 19 C. J. 154; 7 Ency. Pl. & Prac. 120; Garrett v. Garrett, 252 Ill. 318, 96 N. E. 882; Lowenthal v. Lowenthal, 157 N. Y. 236, 51 N. E. 995; Horn v. Horn, 73 Misc. Rep. 14, 130 N. Y. S. 591; Poertner v. Poertner, 66 Wis. 644, 29 N. W. 386; Jackson v. Jackson, 49 Pa. Super. Ct. 18.

7. But, even if it were not for the force of the statute in this case, giving the right of trial by jury, it is difficult to see how appellant's point that the findings were advisory only, could be of any avail. The court adopted the findings, as it would have had a right to do in an equitable case, and there is nothing to indicate that it considered the adoption of the findings obligatory, and that, if it had not, it would have disregarded them, and made findings of its own favorable to the appellant. On the contrary, it appears from the written decision which we find in the record, that the conscience of the court was entirely satisfied with the findings and verdict of the jury. Consequently, appellant could be in no wise prejudiced, even if we conceded that her point that the findings were advisory only, was well taken.

8. We agree with appellant's claim that in an equity case a general verdict should not be submitted or received with special findings, but where, as in this case, the findings were adopted by the court, we are at a loss to perceive how the fact that a general verdict was also received could have injured appellant. The same contention was made and held to be without merit in McCauley v. McKeig, 8 Mont. 389, 21 P. 22, cited by respondent, in respect to which the court said:

"One more alleged error is much relied upon by appellant, who claims that this is an equity case, and that the jury should not have been asked or allowed to return a general verdict, and cites as authority cases from the California reports. The respondent, on the other hand, insists that there is a combination of a common-law action with a suit in equity, and that the question of damages was properly made the subject of

a general verdict, and cites as authority Basey v. Gallagher, 20 Wall. 670. This might, perhaps, afford a subject for learned discussion; but surely it should not be allowed to disturb a solemn judgment. In what respect was the plaintiff injured by the return of a general verdict? The record shows that the jury did return special findings; that the judge below, sitting as an equity judge, did solemnly accept this formal aid to his conscience, and did approve of the special findings; and the record further shows that upon such acceptance and approval, judgment was entered in favor of the defendant. The judgment and order appealed from are affirmed, with costs."

Appellant assigns as error the action of the court in adopting each of the special findings of the jury, claiming that they are not supported by the evidence and are inconsistent with and contradictory to each other. We find nothing contradictory in the findings, and an examination of the record discloses that there is substantial evidence to support them. Respondent was entitled to a decree on the findings. The various matters in which appellant claims the respondent's testimony was impeached were resolved against her by the jury and the trial court.

The judgment is affirmed.