## THE A. G. BROWER.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 116.

1. ADMIRALTY ⬥118—APPELLATE PROCEEDINGS—FINDINGS OF FACT.

An appeal in admiralty operates as a new trial, whether the case was tried by the judge alone or with a jury, and findings of fact are not binding on the appellate court, although they will be given due consideration, and will not be disregarded, unless the court is well satisfied that they are contrary to the weight of evidence.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. ⬥118.]

2. SHIPPING ⬥86—LIABILITY OF VESSEL—INJURY TO STEVEDORE.

Evidence held to sustain a finding that an injury to a stevedore helping to discharge a cargo of grain, by falling over a mooring cable stretched a foot above the deck, while walking along the pier side of the deck after dark on his way to the hatch where he was working, was chargeable to the fault of the vessel in failing to mark the cable by a light, as shown to have been customary.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343, 353–360; Dec. Dig. ⬥86.]

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here on appeal to review a decree of the District Court, Western District of New York, sitting in admiralty, for $500 in favor of libelant. He was a grain shoveler in the employ of the Lake Carriers Association, which was engaged in discharging the vessel's cargo, and sustained personal injuries by tripping over the vessel's after mooring cable, while passing along the deck on the port (dock) side.

There were three mooring cables leading from winches on the vessel to the dock. These wire cables were about a foot above the deck. Libelant came

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on board about 7 a. m. by a ladder—which was shifted from place to place as occasion required. At that time the ladder was placed just aft of the forward cable and from it he walked between hatches 3 and 4 across the deck to the scuttle which led to holds 1 and 2, where he was set to work. At noon he went off the boat for lunch, going from and returning to this scuttle by the same ladder, still located in the same place. A little after 7 p. m.—it was dark then (October 17th)—he left the boat to get a sandwich and a glass of beer. At that time the vessel had been moved along so that the leg of the elevator which was discharging her, was in hatch 6, leading into hold 3. He had been at work just before he left cleaning the leg of the elevator and went ashore, not by the ladder, but by a "door" which let down from the elevator to vessel, a way sometimes used by the shovelers. Upon his return he knew he was to go to work through the after scuttle, located between hatches 7 and 8, and leading to holds 3 and 4. . Returning, he found the ladder placed at the dock side of the ship between hatches 9 and 10—hatch 10 was 2½ feet forward of the boiler house. He mounted the ladder, proceeded forward along the port (dock) side of the deck, and tripped over the mooring cable leading from the after winch, which was located between hatches 8 and 9. He testified that he did not see the cable, because it was dark, and did not know the after winch was located so far forward.

F. W. Ely, of Buffalo, N. Y., for appellant.

Irving W. Cole, of Buffalo, N. Y., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The cause was tried with a jury under the statute providing for such procedure in causes arising on the Lakes. The practice in such cases is discussed in our opinion in Sweeting v. S. S. Western States, 159 Fed. 354, 86 C. C. A. 354. Appeal in admiralty operates as a new trial whether it was tried below by the judge alone, or with a jury.

The jury's findings as to the facts are not conclusive here, as they would be on a writ of error, where the issues had been submitted to them under a charge to which no sound exceptions had been reserved. Nevertheless the findings of the trial court, whether by judge or jury, on the questions of fact, being the conclusions reached by the tribunal which heard and saw the witnesses, are given due consideration and will not be disregarded, unless the appellate court is well satisfied that they are contrary to the weight of evidence.

[2] Examination of the testimony leads us to the conclusion reached in the District Court. This cable was an obstruction to the passageway on the port side of the vessel—a necessary obstruction, no doubt. By daylight, when its presence could be observed, the passageway was not thereby rendered unsafe. After nightfall the condition was this. On the elevator tower there was a cluster of electric lights, with a reflector behind them so arranged as to throw the light straight out from the tower; some of these lights were out of commission (bulbs broken or filaments burnt out); the reflector was rusty. Eighty or more feet aft of these tower lights was a 32-candle electric lamp, with reflector, on the port side of the boiler house, and a similar one on the starboard side. The electric lighting current of the ship was turned on, but there is a conflict of testimony as to whether the particular port lamp was burning at the time; witnesses who passed close to it, and one witness who at the time of the accident was looking aft,

did not notice that it was burning. Whether it was burning or not, we are satisfied that neither it nor the tower lights sufficiently illuminated that part of the passage, which this cable crossed, to disclose the presence of the cable to a person walking along the passageway. Two or three others besides the plaintiff tripped over it that same night.

There is evidence that when men are at work on the ship, and one of these cables is not sufficiently illuminated to be readily observed, it is usual to hang a lantern on such cable to advise those using the passageway of its presence. We think the situation on the night in question called for some such precaution. No doubt there was a safe passage fore and aft on the starboard side, no better lit than the port side. But except for the cable the port side afforded as safe a passageway as the starboard, and it might be expected that it would be used by any one working there who was not advised, or had no reason to expect, there was a cable in that part of the passageway he was using. The midship cable at that time was forward of the scuttle which led to holds 3 and 4. The ladder provided for their access to the ship was at that time located aft; between these two points this after cable ran above the deck from the after winch to the dock. There is testimony that this after winch was considerably further forward of the stern than is usual, and it might well be expected that any one coming up the ladder, and seeing no lantern between the ladder and the scuttle he was bound to, would suppose that the ladder had been placed forward of the after cable expressly to afford access to the vessel at a place whence one could go with safety to the scuttle.

Nor do we think libelant was negligent. He said that was the only boat he ever saw with the after winch so far forward of the boiler house, and that he supposed the ladder in the evening had been placed forward of the after cable, just as, when he came on board in the morning and the ladder was further forward, it was placed aft of the forward cable.

Decree affirmed, with interest and costs.