**JOHNSON v. COOPER.**

No. 13760.

United States Court of Appeals
Eighth Circuit.

Feb. 25, 1949.

G. Ray Petty, of Memphis, Tenn., and George K. Cracraft, of Helena, Ark., for appellant.

A. M. Coates, of Helena, Ark., for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought by Jesse L. Cooper, the owner of the towboat "Steve Click, Jr.," against A. C. Johnson to recover the damages resulting from the sinking of the boat on July 3, 1947. It was alleged in the complaint that an agreement was entered into between plaintiff and defendant whereby plaintiff leased and chartered the boat to defendant to be moved from Memphis, Tennessee, where she was lying moored in the Wolf River, and used by defendant in the towing service in the waters of the Mississippi River in and around the Port of Helena, Arkansas, and that it was agreed that as soon as the vessel was inspected at the Customs House at Memphis, Tennessee, the defendant would take it in charge and move it to the Port of Helena, Arkansas, to engage in said towing service. That the vessel was inspected by the office of the United States Coast Guard and met all requirements and defendant reported at the Customs House and there signed as Master of the vessel and taking full charge thereof removed it to the Port of Helena, Arkansas, for the purpose of engaging in said business. That the agreement was that the defendant was to operate the boat in said towing service, and after paying all expenses incident to said operation was to pay plaintiff one-half of the net profits arising from said operation as rent for the towboat, and would at all times take the necessary steps to see that the boat was protected from the hazards of the river.[1] That upon the arrival of the boat at the Port of Helena the defendant moored the same to the south end of the unloading and loading dock of the Helena Terminal, some fifty or seventy-five yards from the

---

[1] There was also an allegation that defendant agreed to keep the boat insured against sinkage, but the court found that "there was no agreement between the plaintiff and the defendant under the terms of which the defendant was bound to insure said vessel", and that issue is not before us.

shore, leaving the boat wholly unattended, without crew or watchman and without proper anchor lines, and as a result of the negligence of the defendant the boat sank, resulting in a total loss thereof to the plaintiff. "That the sinking of the boat was due to the negligence of the defendant in his failure to properly protect said boat by keeping a watchman thereon and by keeping the water pumped from the hull and by his failure to properly moor the boat to the shore." Damages for the defendant's negligence in permitting the boat to sink were prayed in the sum of $15,000. Defendant answered by specific and general denial of the allegations of the complaint. He admitted that the boat had been inspected at the office of the United States Coast Guard at Memphis and certified to meet the re-

quirements of the inspection, and that he enrolled as Master of the boat, but stated that he had done so, "at the request of the plaintiff who could not qualify as a Master but that the service only extended to the trip from Memphis to Helena, terminating on the same day", and he denied that the boat was at any time in his charge or that he was the Master of it except on the one day of that trip.

On plaintiff's motion, with defendant's consent, plaintiff's request for jury trial was withdrawn and the case was transferred to the admiralty docket, to be tried by the court as an action in admiralty. The trial continued through six days, resulting in a long record of conflicting testimony, and at its conclusion the court made carefully prepared and complete findings of the facts [2]

[2] The Court made the following findings of fact:

"I. That the plaintiff, Jesse L. Cooper, is a resident and citizen of Memphis, Shelby County, Tennessee, and is the owner of a steamboat 119 feet long and 22 foot beam, with steel hull, engines, rig, etc., and known and registered as the Steve Click, Jr.

"II. That the defendant is a resident and citizen of Helena, Phillips County, Arkansas.

"III. That the defendant, A. C. Johnson, prior to the occurrences hereinafter set forth, was engaged in operating a steamboat named the Wacutta on the Mississippi River, operating out of the Port of Helena, Arkansas; that the said A. C. Johnson desired to procure the services of a smaller steamboat to be operated in the harbor service at Helena in towing barges and boats, and did, during the early part of June, 1947, contact the plaintiff, Jesse L. Cooper, in Memphis, Tennessee, through one Leonard Wallace; that after a conference between the said Leonard Wallace and the plaintiff, the said Wallace informed the defendant that the plaintiff had a steamboat located in the Wolf River at the Port of Memphis, Tennessee, of the type and kind desired; whereupon the defendant A. C. Johnson, in company with the said Wallace, went to Memphis and sought out the plaintiff for the purpose of determining whether the use of the Steve Click, Jr., in the towing service at the Port of Helena, Arkansas, could be obtained; that during the said conference negotiations were had for a contract, but the Court finds that the minds of the parties did not meet upon the terms

thereof; however, it was agreed between the plaintiff and the defendant at said conference that the plaintiff would deliver said vessel into the exclusive care, control and custody of the defendant A. C. Johnson at the Port of Memphis, where he was to take command thereof as master, and also possession thereof as sole custodian, and bring the vessel to Helena and retain it in his sole custody and control until a written contract could be drawn by his attorneys embodying the terms and conditions under which the vessel would, after the execution of said contract, be used for the mutual benefit of the parties in the towing service in the Port of Helena, Arkansas, it being agreed by said parties that in the event said written contract was not entered into, the defendant was to return the vessel to the Port of Memphis, Tennessee, in the condition in which it was at the time it was taken into his custody, less reasonable wear and tear, it being contemplated that as soon as the written contract was signed, the vessel would be put into immediate service in the Port of Helena.

"That in accordance with said last mentioned agreement, the defendant A. C. Johnson brought said vessel from the Port of Memphis to the Port of Helena and contacted his attorneys, the firm of Dinning & Dinning in Helena, Arkansas, for the purpose of having said contract drawn; and at some date unknown to the Court the contract was drawn, but was never submitted to the parties for their approval or signature.

"IV. That there was not a meeting of the minds of the parties with respect to the terms and conditions of the written

and concluded that the plaintiff was entitled to recover against defendant in the sum of $15,000. Judgment was entered accordingly and defendant has taken this appeal.

---

contract which was to be finally executed by them.

"V. That the defendant was not only master but also sole custodian of said vessel on the trip from the Port of Memphis to the Port of Helena; that the said Wallace was the engineer of said vessel; that the plaintiff accompanied the vessel from the Port of Memphis to the Port of Helena, but merely for the purpose of observing the performance of the vessel with respect to repairs that had been previously made, including new bearings, and to give advice and aid if it became necessary; and that he was not to receive any pay therefor, nor was he a member of the crew in anywise. The vessel arrived in Helena during the evening of June 18, 1947, and the plaintiff returned to Memphis the following day.

"VI. That on June 17, 1947, said vessel was inspected by the office of the United States Coast Guard Marine Inspection at Memphis, Tennessee, and was found to be seaworthy, and on said date the defendant A. C. Johnson enrolled in said office as the master of said vessel, and on said date the plaintiff delivered said vessel into the exclusive care, control and custody of the defendant as aforesaid. At the time of the delivery of said vessel as aforesaid to said A. C. Johnson the same was seaworthy.

"VII. Upon arriving at the Port of Helena, the defendant moored the Steve Click, Jr., at the south end of the loading barge of the Federal Barge Lines in the Port of Helena, mooring her on the side next to the shore of the Wacutta, a vessel belonging to the defendant, attaching her to the Wacutta between the latter and the shore.

"VIII. That the Steve Click, Jr., remained moored alongside the Wacutta until shortly before sundown on the evening of July 1, 1947, at which time the defendant removed the Wacutta from where she had been moored, detached the Steve Click, Jr. therefrom and moored her at the south end of said loading barge, where the Wacutta had been moored, by means of two grass ropes and a steel cable, fastening said ropes and cable to the knees of the loading barge, and with one steel cable running from the forward part of said Steve Click, Jr. on the shore side, to a cluster of pilings on the shore, but that said defendant in mooring said vessel placed no stern line thereon to prevent said vessel from swaying back and forth; that in mooring said vessel in such a manner the said A. C. Johnson placed it in such a position where it was subject to being washed by the waves created by passing vessels or vessels otherwise in the immediate neighborhood of the Steve Click, Jr., and by ground swells rebounding from the shore, and in a place where the vessel was subject to the action of a strong eddy. The Wacutta is a much larger vessel than the Steve Click, Jr.

"IX. That after remooring the Steve Click, Jr. as aforesaid, the said A. C. Johnson forthwith went aboard the Wacutta and left for a trip down the River on a towing assignment of his own, to be gone for several days, and was gone for a period of one week.

"X. That during all of the period of time beginning when the defendant took charge of said vessel in the Port of Memphis, until she sank as hereinafter set forth, he was in the sole and exclusive custody and possession of said Steve Click, Jr.

"XI. That notwithstanding the fact that the Steve Click, Jr. had been moored in the manner aforesaid, which the 'Court finds to have been an improper and negligent mooring, and notwithstanding the further fact that the Steve Click, Jr., a small vessel, was moored at a place where it was subject to the action of the aforesaid eddy and the lapping of the waves from larger vessels in the neighborhood, and ground swells, the said defendant failed to make any provision whatsoever from the preservation of said vessel, in that he left no watchman or caretaker on the vessel, in that he made no arrangements for periodic inspection thereof, or for a watching over of said vessel by the personnel of the Terminal to which she was attached, where the court finds rivermen were on duty twenty-four hours of the day; nor did said defendant make any arrangements whereby someone of responsibility could arrange for aid to the vessel in the event she should become endangered; and the Court finds that such failure and/or failures on his part constituted negligence.

"XII. The Court further finds that at 8:34 A. M. on July 3, 1947, the Steve Click, Jr. sank at the point hereinbefore mentioned, first listing to her port side, breaking loose the port side mooring at the bow, and then listing to the starboard side, breaking loose the starboard mooring at the bow, and sliding out into the channel of the River a distance of approximately one hundred yards, where

940

## Opinion.

■ The appellant here has not pointed out to us and argued in his brief any ruling made by the trial court or any declaration or application of law made by the court which he claims to have been erroneous in law and prejudicial to him. He has instead asserted and argued under five headings matters which lead to his "conclusion" that "The facts overwhelmingly preponderrate in favor of appellant's innocence of negligence and exercise of due diligence" and "appellee utterly failed to prove that appellant was guilty of negligence and liable for the sinking of the Steve Click, Jr. as charged." While it is true that the case was transferred to the admiralty docket and tried as one in admiralty, it nowhere appears that any principle peculiar to maritime law was invoked or applicable, and appellant asserts here in an assignment of error that "the relationship of the parties is such that their rights should be settled on principle other than that of maritime tort." The case was determined as shown by the appended findings and conclusions of the trial court on the principle that one who takes over the personal property of another upon agreement to preserve it and restore it in as good condition as when received upon the happening of certain events is liable for the loss of the property so held by him proximately caused by his negligence. The court found such taking over of the boat by defendant and negligence of defendant proximately causing its loss as facts shown by the evidence.

■ As appellant has made no point that the court's findings do not fully sustain the judgment, and as the facts found manifestly do require the judgment entered in accord with them, it is clear that whether the appeal is in admiralty or for review of a civil action tried to the court without a jury this court may not disturb the findings of facts of the trial court or reverse the judgment unless the findings, or one or more of them, are clearly erroneous. The rule governing appeals in admiralty cases in this respect is the same as in appeals from judgments in civil actions tried by the court. In Petterson Lighterage & Towing Corp. v. New York

she sank in approximately forty-five feet of water.

"XIII. That no inspection or examination was made of said Steve Click, Jr. by the defendant at the time he remoored her as aforesaid. It was late in the afternoon and the defendant and his employee who assisted him were both in a hurry. That the defendant knew at the time that he should have attached a stern line to the vessel, but that he left that to be done by an employee of his, one Blankenship, and the attachment was never made.

"XIV. That shortly before the vessel sank, it was discovered by the United States Naval Reserve that the vessel was sinking, and personnel of that Reserve, and other parties, steamed to said vessel and endeavored to save her, but it was too late to do so. They found a small hole in the hull of the vessel in the side next to the shore a short distance above the normal water line, being a horizontal one about one-half inch wide and four inches long. The water going through said hole made a loud noise, which first attracted the attention of a member of the Naval Reserve as he was passing said vessel. That at 5:00 P. M. the day before there was nothing in the condition of said vessel to indicate that she was taking water, and she appeared to have her regular amount of freeboard.

"XV. That all vessels of the type of the Steve Click, Jr. are subject to take water when moored and in operation, through the stuffing boxes and rudder posts, and also subject to take water through the breaking of pipes, necessary in the operation of a steam vessel, running to the outside of the ship, which facts were known to the defendant.

"XVI. That had it been discovered one hour before the vessel sank that she was taking water, either from the hole aforesaid or otherwise as above indicated, or both, she could have been saved. That if the defendant had used due care to employ a watchman or caretaker, or to engage one of the personnel of the Terminal Barge, or anyone else, to look after said vessel, said leakage would have been discovered in time to have saved the vessel, and that said defendant's failure so to do was negligence on his part and the proximate cause of the loss of the vessel.

"XVII. That by reason of the sinking of said vessel the plaintiff has been damaged in the sum of $15,000.00.

"XVIII. That there was no agreement between the plaintiff and the defendant under the terms of which the defendant was bound to insure said vessel."

Central R. Co., 2 Cir., 126 F.2d 992, at pages 994, 995, the court said:

"Even before the promulgation of Admiralty Rule 46½ in June, 1930, 28 U.S.C.A. following section 723 (281 U.S. 773) the decisions were legion that when a judge had seen and heard the witnesses his conclusions would prevail unless clearly wrong. We had repeatedly so held. The Jersey City, 2 Cir., 51 F. 527; The Albany, 2 Cir., 81 F. 966, 968 (semble); the A. G. Brower, 2 Cir., 220 F. 648; The F. B. Squire, 2 Cir., 248 F. 469; Donovan v. New York Trap Rock Co., 2 Cir., 271 F. 308; The Perry Setzer, 2 Cir., 299 F. 586; United States Mexican Oil Corporation v. Pennsylvania R. Co., 2 Cir., 20 F.2d 385; The James McWilliams, 2 Cir., 42 F.2d 130; The Cullen No. 32, 2 Cir., 62 F.2d 68. And when the question came up after Rule 46½ was passed, express findings were naturally accorded the same finality as implicit findings had been given before. Lillig v. Union Sulphur Co., 9 Cir., 87 F.2d 277; The Berwindglen, 1 Cir., 88 F.2d 125; Eastern Tar Products Co. v. Chesapeake Oil Transport Co., 4 Cir., 101 F.2d 30; City of Cleveland v. McIver, 6 Cir., 109 F.2d 69; Commercial Molasses Corp. v. New York Tank Barge Corp., 2 Cir., 114 F.2d 248, 250; The S. C. L. No. 9, 3 Cir., 114 F.2d 964; The Bellatrix, 3 Cir., 114 F.2d 1004; McAllister Bros. v. Pennsylvania R. Co., 2 Cir., 118 F.2d 45; Johnson v. Andrus, 2 Cir., 119 F.2d 287; United States Gypsum Co. v. Conners Marine Co., 2 Cir., 119 F.2d 689."

In The C. W. Crane, 2 Cir., 155 F.2d 940, 941, the same court said:

"This appeal represents one more effort to induce us in an admiralty case to disregard the trial judge's findings of fact although supported by evidence, where the testimony is in conflict, and where he heard and saw most of the witnesses—something which we have repeatedly said we would not do." Citing cases.

The rule as to review of findings of fact in appeals in civil actions is stated and the cases are cited for this court in Hudspeth v. Esso Standard Oil Co., 8 Cir., 170 F.2d 418.

Notwithstanding the appellant here has not pointed in his brief to any specific findings of fact made by the district court asserted to be unsupported by testimony, we have carefully examined all the evidence and made comparison with the trial court's findings. We are satisfied that each of the findings is supported by credible testimony or documentary evidence and that none is clearly erroneous. It is of no importance that another trier of the facts might have taken a different view of the evidence and might have drawn different inferences from the whole or particular parts thereof, nor would it serve a useful end to discuss such possible inferences tending to relieve the appellant from liability. The district court's findings supported by evidence must control decision here.

The record herein shows that some five months after the entry of the judgment in the district court and the taking of this appeal, the plaintiff filed a motion in the district court for a new trial with leave to take additional newly discovered evidence and that the court, on consideration of the motion and affidavits attached thereto and counter affidavits, found that there were no errors of law appearing on the face of the record in the case and that the new facts discovered since the decree would not materially affect the decree or probably induce a different result and overruled the motion. Beyond including said proceedings in the record here appellant has made no reference to them in his brief. They were directed to the sound discretion of the court and no abuse of such discretion is shown and the court's denial of the motion is not the subject of appeal. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, loc. cit. 137, 57 S.Ct. 382, 81 L.Ed 557.

The judgment is in accord with the findings and as there are no grounds upon which the findings may be upset, the judgment should be and it is:

Affirmed.