**REISS S. S. CO. v. GREAT LAKES TOWING CO. et al.**

**No. 13921.**

United States Court of Appeals
Eighth Circuit.

Nov. 8, 1949.

Theo. C. Robinson and Lucian Y. Ray, Cleveland, Ohio (Robt. G. McCreary, Cleveland, Ohio, W. O. Bissonett, Duluth, Minn., and Leckie, McCreary, Schlitz & Hinslea, Cleveland, Ohio, were with them on the brief), for appellant.

Carl A. Schipfer, Cleveland, Ohio (W. Alexander Eldridge, Cleveland, Ohio, Roger W. Spencer, Duluth, Minn., and McKeehan, Merrick, Arter & Stewart, Cleveland, Ohio, were with him on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

The owner of the steamer Otto M. Reiss has taken this appeal to reverse a decree in Admiralty which dismissed its claim against the Tug Massachusetts for damage done the steamer in a marine accident which occurred within the Duluth-Superior Harbor on August 29, 1944. Before commencing the movement in which the accident occurred the steamer, loaded with wheat and fully manned, with steam up, was in the Great Northern Elevator Slip headed in, port side to the dock, with her stern between six and seven hundred feet from the opening of the slip into the adjacent St. Louis Bay South channel, and the accident occurred while the steamer assisted by the tug was attempting to move from that position to a position out in the channel in which her stern would be upstream in the channel and her bow pointed towards the South Draw of the Northern Pacific Railway Bridge, so that she could pass through the draw. It was intended that in the course of the movement the steamer's stern would swing in an arc to the left out of the slip to the desired position upstream in the channel, but as it was carried out the steamer moved backwards with but little deviation from a straight line and only a partial turning of her stern upstream all the way out of the slip clear across the South Channel and into and against the northerly bank of the channel. Parts at her stern were damaged by the impact. The tug then took a line from the steamer's bow and assisted by the steamer's own power, drew away from the bank and through the north draw of the bridge to anchorage. The movement of the steamer out of the slip and across the channel to the bank covered a distance of around 1,500 feet and was made in broad daylight on a clear day between about 4:15 and 4:40 in the afternoon without wind or current enough to cause interference with it. The tug had a line from the steamer's stern throughout the movement until a short time before the steamer struck the bank, when the line was first slackened and then let go.

The claimant, owner of the steamer, alleged that the accident and the resultant damage was caused by the negligence of the tug in that she did not take a strain on the line at the proper time and proceed to tow the stern of the steamer upstream, and in that her letting go of the line was unnecessary and negligent and in that the tug and her tow line were not handled with reasonable care and in accordance with the ordinary practices of good seamanship.

The court delivered its opinion in writing and made special findings of fact and conclusions of law in accord with the opinion which is reported, D.C., 79 F.Supp. 1. The discussion here is related to the reported opinion and we avoid repetitions useless to any one reading that opinion.

As shown by its opinion, the trial court held that the burden of proof was upon the claimant to show by a fair preponderance of the evidence that the tug was guilty of negligence proximately causing the damage to the steamer and that the steamer failed to sustain the burden of proof resting upon it. The court found that in fact the steamer instead of stopping her sternway by stopping her engine and working it ahead, as she should have done at a point inside the slip, continued her sternway from the commencement of the movement until she overpowered the tug, causing it to take water upon its deck and placing it in danger of jack knifing. In order to avoid capsizing, those on the tug slackened the tow line and while they continued their efforts the tow line went overboard and was lost in an earnest effort of the tug's crew attemping to maneuver the tug in a position to meet the emergency created by the continued movement of the steamer astern. None of the power of the tug was applied in pulling the Reiss across the South Channel, but the steamer was worked across the channel and into the bank with her rudder hard left by the power of her own engine. The court concluded that she was guilty of faults of navigation amounting to negligence which were the sole cause of the damage.

### Opinion.

Much of the brief and argument for the appellant here is rested on the proposition that on this appeal in Admiralty

this court will try the case and make independent determination of the facts de novo. But such is not the function of this court as declared in its decisions. While recognizing Admiralty appeals as new trials, we hold that findings of fact reached upon conflicting testimony and based upon the credibility of witnesses whom the District court saw and heard will not be reversed here unless clearly erroneous. Northern Navigation Co. v. Minnesota Atlantic Transit Co., 8 Cir., 49 F.2d 203; Johnson v. Cooper, 8 Cir., 172 F.2d 937.

The appellant attacks the trial court's findings to the effect that the steamer did not stop or put her engine ahead when signalled to by the tug, but on the contrary, continued her sternway movement until the tug was required to abandon the tow line to avoid capsizing and the steamer was driven against the bank. It contends the court should have found that the steamer did stop her engine when signalled and did work it ahead and insists that the court should have followed the testimony of the steamer's officers who were in the best position to know about the working of her engine. It argues also that the steamer struck only lightly against the submerged channel bank and that was proof she was not working astern. Also that it was not necessary for the tug to have let go the tow line and it should not have done so. A main contention earnestly stressed and elaborated is that the tug was negligent in failing to haul the steamer's stern upstream in a short enough arc so that the turning maneuver could be safely accomplished.

■ But when all the testimony is read and considered together with the court's findings, and the attacks here presented against the findings, it is apparent that the efforts of the appellant are simply to have this court ascribe more or less weight to particular testimony than was given it by the court who saw and heard the witnesses, and this court must decline to do so. There was substantial and credible evidence that the steamer came into collision with the northerly bank of the channel through the application of its own engine power, that its sternward movement overpowered the

tug and put it in peril of capsizing and that the letting go of the tow line occurred while the tug, earnestly endeavoring to perform its functions, was in that peril; that although the tug began to haul the steamer's stern upstream as soon as the tug cleared the slip, at the end of her 50 feet of tow line, the speed of the steamer astern with helm hard left prevented the tug from pulling the stern of the steamer upstream and the continued sternway nullified all its efforts to do so.

■ We do not conclude that any of the findings of the District court were unsupported by substantial credible evidence or were clearly erroneous. The court's refusal to require contribution from the tug followed from the conclusion that the negligent sternward movement of the steamer on her own power from her position inside the slip to the point of the contact of the stern and the channel bank was the sole and sufficient cause of the damage. We agree with the trial court that the fact that the tug did not sound an alarm signal did not contribute to the damage. The captain of the tug testified that as he stood at the tiller of his careening and imperilled tug he could not reach to give the alarm signal, but the captain of the steamer had word through the Chadbourne from his officer on the fantail that his ship was not clear and was himself in his pilot house in the best position to see all that went on and to appreciate the necessity of stopping the sternway of the steamer and working her ahead.

We find no error of law committed by the trial court. That the burden of proof was on the claimant steamer as declared by the court is not contested and the judgment awarded to the tug necessarily followed from the finding of fact that the negligent navigation of the steamer caused the damage. Though all contentions ably argued by counsel on both sides have been considered, our conclusion that the judgment is supported by the findings and that none of them is clearly erroneous makes further elaboration unnecessary.

As the trial court found it unnecessary to decide the questions raised concerning

the validity or effect of paragraph 17 of the tariff introduced by petitioner (the tug) and claimed by it to be a contract of private towage exempting the tug from liability, we make no decisions upon them here.

The decree appealed from is affirmed at appellant's costs.