UNITED STATES of America
v.
An article of Drug, etc. . . . ., consisting of 40 CASES, etc. . . . "CDC CAPSULES . . . .", Cove Vitamin and Pharmaceutical, Inc.

No. 62 M 63.

United States District Court
E. D. New York.

April 23, 1962.

Milton A. Bass, New York City (Bass & Friend, New York City, of counsel) for claimant in support of Motion for Summary Judgment.

Martin Pollner, Adelphi, Md. (Joseph P. Hoey, U. S. Atty., of counsel), opposed.

DOOLING, District Judge.

Claimant moves for summary judgment on the ground that the libel charges that the misbranding of claimant's safflower oil and vitamin B–6 capsules consisted in representing that the product itself was efficacious as a weight reducing agent whereas, claimant contends, as a matter of indisputable fact the capsule was labelled only as a supplement for use with the CDC Weight Control Program.

It has been concluded, on an earlier motion, D.C., 204 F.Supp. 280 that there is an issue of fact concerning the extent to which matter contained in Taller's book "Calories Don't Count" has been incorporated as "label" on claimant's product. That conclusion complicates the task of isolating the present issue because it suggests that matter which is "label" and located in Taller's book could be advanced by the libellant as, at least arguably, claiming directly remedial effect for the capsules. Taller's pervading insistence is that such a polyunsaturated fatty acid as safflower oil functions, as a matter of body chemistry, to dispose of certain fatty tissue; he argues (and the pamphlet, accompanying each lot of capsules, repeats) that meals must not be omitted, that the patient should force himself to eat at least some food containing polyunsaturated fat and should not worry about ingesting too much fat since the sign of eating too much of it is nausea. A permissible inference from the urging to eat polyunsaturated fatty acids even to the point at which they nauseate is that they are presented not as dietary supplements but as a specific for weight reduction (or, more accurately, for reduction in girth). Taller's recital of his own experience of amelioration when he added an intake of polyunsaturated fatty acids to his customary diet makes his point with neat impressiveness.

Assuming that exactly what has been represented is factually controversial to the extent that it depends on determining how much of Taller's book shines through the formal label of the capsules, does the affirmative language choice of the label and advertisements remove whatever claims are made from the product itself and fasten those claims on the "CDC Weight Control Program" as a distinguishable thing and on it alone,

so that it can be said that the claims are not made for the capsules, which alone are charged with being misbranded?

The pamphlet enclosed in each package of CDC capsules is explicit that CDC capsules are to be taken before each of the three daily meals that must be eaten. The dietary commands are of triple aspect: eat foods that contain proteins and polyunsaturated fatty acids; avoid foods that are high in carbohydrates; within the foregoing principle of selection, ignore quantitative measures of caloric intake. The more detailed instructions discriminate kinds of fats; visible meat fat is to be cut away and the vegetable oils are to be used in cooking; fish or seafood the patient is to make sure he eats once a day, because they are rich in polyunsaturated fatty acids.

The formal label of the CDC capsules directs that two capsules be taken before each meal. This is followed by the sentence "For *additional* information and suggested menus to *help* you lose weight with the CDC Weight Control Program refer to the enclosed booklet * * *" (Italics added). The choice of language, however inadvertent to the point, might suggest that primacy of importance attaches to taking the capsules and that the rest is additional and helpful rather than central. The "ingredients" statement discloses that each capsule holds 912 mg. of safflower oil and that "Safflower oil provides a supplementary source of polyunsaturated fatty acids essential to the CDC Weight Control Program". The pamphlet, with its emphasis on the importance of consuming foods rich in polyunsaturated fatty acids without regard to quantity (as contrasted to the rigorous ban on carbohydrates and the disapproval of the most obvious of fats, the visible fat on meat), assigns a special and necessarily remedial role to the polyunsaturated fatty acids of which safflower oil is stated on the package to be one.

The New York Times advertisement of January 21, 1962 states, "In fact, a well-known doctor advocates that to get rid of excess fat, you must eat three full meals a day, *and you must consume more fats* of a very special kind. These are the polyunsaturated fats." (Italics in original). After referring to the CDC plan as a "new bio-chemical" concept of weight control, the advertisement characterizes as the plan's cornerstone "a radical new diet pattern that calls for plenty of fats, preferably polyunsaturated fats." After a sub-headline reading "Polyunsaturated fats essential", the copy continues, "And because it is sometimes difficult for people unaccustomed to large amounts of fats in the diet to take in each day the quantities of fats called for, the CDC plan provides you with polyunsaturated fats in convenient capsule form to supplement your meals." It is, further on, said, "The combination of CDC capsules and the CDC weight control program is designed to help you lose excess fat * * *". A sub-headline of the advertisement reads: "The more fat you eat, the more fat you lose!"

If the claims were meant to attach to the program and not to the product the intention failed of execution. The essence of the whole is that the capsules are, in concentrated form, the polyunsaturated fatty acid that is the true specific for burning off body fat that has been lacking in all previous calorie-counting diets, or so, certainly, on the facts, a jury could reasonably find. The capsules alone are not held out as all sufficient, nor heavy consumption of foods rich in polyunsaturated fatty acids; but the representation may properly be found to be that the capsules specifically will as a matter of bio-chemistry function to dispose of fatty tissue because they contain polyunsaturated fatty acids; whether reduction in weight or girth follows is plainly enough made to depend on whether carbohydrates are sufficiently eliminated from the diet; but the ameliorative role specifically assigned to the polyunsaturated fatty acids, and therefore to the CDC capsules of safflower oil, is indelibly part of the representations.

Supposing that the CDC capsules were represented only as integral to a regimen

for which the broader claims were made, the broader claims would nevertheless be part of the labelling of the capsules. Few remedies operate outside a regimen and if a substance is the defining element of a regimen, what is said of the regimen is said of its characterizing element. So here; the regimen is characterized by consumption of polyunsaturated fatty acids; that is the differentiating and defining element; the CDC capsules are, in concentrated form, that element and a label-prescribed part of the regimen; what is said of the regimen is said of the CDC capsules. Colusa Remedy Co. v. United States, 8th Cir. 1949, 176 F. 2d 554 and Bradley v. United States, 5th Cir. 1920, 264 F. 79 imply as much if, not having to, they do not go just that far.

It is concluded that the motion for summary judgment must be, and it is, denied.

It is so ordered.